## TOLEDO BAR ASSOCIATION *v.* CROSSMOCK.

### [Cite as *Toledo Bar Assn. v. Crossmock,* 111 Ohio St.3d 278, 2006-Ohio-5706.]

(No. 2006–1148—Submitted August 8, 2006—Decided November 15, 2006.)

---

**Per Curiam.**

{¶ 1} Respondent, Steven Lynn Crossmock of Toledo, Ohio, Attorney Registration No. 0041947, was admitted to the Ohio bar in 1989.

{¶ 2} On August 8, 2005, relator, Toledo Bar Association, filed a complaint charging respondent with professional misconduct. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in May 2006. The panel then prepared written findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

### Misconduct

#### *Count I*

{¶ 3} Between 1993 and 2003, respondent converted for his own use some funds that belonged to his law firm. His actions violated the agreements that he had made with his firm for dividing fees from judgments and settlements in the firm's personal-injury cases. Respondent deposited checks payable to the firm in his own escrow account, paid all amounts owed to the firm's clients, and then converted the balance of the settlement or judgment proceeds for his own use rather than sharing that balance with his law firm as he had agreed to do. The

total amount of money belonging to the law firm that respondent converted for his own use appeared to exceed $300,000. In 2003, respondent left the law firm and repaid the money that he had improperly taken.

{¶ 4} Respondent admitted and the board found that his actions violated the following Disciplinary Rules: DR 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation) and 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law).

## Count II

{¶ 5} Respondent represented Jan Fincher in a personal-injury matter between 1999 and 2003. During the representation, respondent made roughly 40 payments to Fincher directly or to others for her benefit. Most of those payments were permissible advances to cover litigation-related or investigation-related expenses for Fincher's case, but seven payments totaling more than $6,500 were not. At least one of the seven improper payments covered a medical treatment for Fincher, and two others paid for health-insurance coverage on her behalf.

{¶ 6} Respondent admitted and the board found that his actions violated DR 5–103(B) (prohibiting a lawyer from providing financial assistance or advancing funds to a client for expenses other than litigation costs).

## Sanction

{¶ 7} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent had acted with a dishonest or selfish motive and had engaged in a pattern of misconduct. BCGD Proc.Reg. 10(B)(1)(b) and (c).

{¶ 8} Mitigating factors identified by the board were the absence of any prior disciplinary record, respondent's timely and good-faith effort to provide restitution to his law firm, and his cooperative attitude during the disciplinary proceedings. BCGD Proc.Reg. 10(B)(2)(a), (c), and (d). The board also noted that respondent did not harm any clients or misappropriate any client funds. In addition, respondent testified that he has sought and received mental-health treatment for a bipolar disorder since 2003, and he presented letters from a treating psychiatrist and clinical counselor supporting that testimony.

{¶ 9} Relator and respondent both recommended that respondent be indefinitely suspended from the practice of law. The panel and the board issued similar

recommendations. Respondent has filed no objections to the board's findings or its recommendation.

{¶ 10} We have reviewed the board's report and the record, and we find that respondent violated all of the provisions as described above. We also agree with the recommended sanction.

{¶ 11} We have imposed indefinite suspensions in similar cases. See, e.g., *Disciplinary Counsel v. Yajko* (1997), 77 Ohio St.3d 385, 674 N.E.2d 684 (attorney misappropriated funds from his law firm on multiple occasions over several years); *Disciplinary Counsel v. Crowley* (1994), 69 Ohio St.3d 554, 634 N.E.2d 1008 (attorney misappropriated funds from his law firm over several years by submitting fraudulent expense-reimbursement requests).

{¶ 12} Accordingly, respondent is hereby indefinitely suspended from the practice of law in Ohio. If respondent petitions for reinstatement, he must (1) demonstrate that he has continued to receive treatment for his bipolar disorder as recommended by a psychiatrist, psychologist, or other licensed health-care professional, (2) demonstrate that he has taken as directed all medications prescribed for him by a licensed health-care professional, and (3) be evaluated by a psychiatrist, psychologist, or other licensed mental-health professional within 60 days prior to his petition for reinstatement and present a written report from that professional stating that respondent is able to return to the competent and ethical practice of law. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

O'DONNELL, J., dissents and would permanently disbar respondent.

LANZINGER, J., not participating.

———

Vassar, Dills, Dawson & Bonfiglio, L.L.C., and Joseph P. Dawson; Robison, Curphey & O'Connell and Peter N. Lavalette, for relator.

Kettlewell & Kettlewell, L.L.C., and Charles J. Kettlewell, for respondent.